with me as counsel for co-defendant Richard Macias, and we will be dividing our argument time. I would like to save two minutes of my time for rebuttal, and I believe Mr. Crawford is going to save some time as well. Since we have joint issues, we also have divided the argument on those, and I will be addressing the issues of severance and the issue regarding the expert testimony admitted in this trial. Severance should be granted even when joinder is proper, when there is a danger that a joint trial will prevent the jury from reliably determining guilt or innocence, or when the joint trial is going to deprive the defendants of a specific trial right. In this case, the joint trial effectively deprived the jury from, excuse me, Your Honor, from reliably determining innocence or guilt because one defendant, Sanchez, raised an entrapment defense and not only argued entrapment, but specifically identified my client as the source of drugs in this case. In addition, because there was a joint trial, the district court excluded some of the impeachment evidence against Mr. Sanchez, including the fact that he'd previously been convicted of a kidnapping, which kidnapping occurred over a drug debt. So what the jury heard against Mr. Sanchez, the allegedly entrapped defendant, was that he was a drug addict, he had a long and painful history of drug addiction, he was trying to get clean, and he had had a couple of priors for possession for sale. But those prior convictions involved relatively small amounts of drugs which could be consistent either with possession for sale or with possession for personal use, since he was an addict and he used a lot of drugs, as he testified to. Now, this is a case where the defense is what we call mutually antagonistic. Essentially, if the jury believed Mr. Sanchez that he was entrapped, if they gave his testimony any credibility at all, there was really no reason and no way that they could have acquitted my client, Mr. Calderon. And Mr. Macias was in a slightly different position because, well, I think my co-counsel will be arguing that as well, but at least as to my client, the defendant, I mean, Defendant Sanchez clearly said, he's the one who got me the drugs, he's the one, and he described the whole long story of how he got the drugs to the scene. Now, on the other hand, if the jury believed Sanchez, I mean, if the jury didn't believe Sanchez, which they apparently didn't since they convicted him, there would be no way – well, I mean, I'm sorry, I misspoke. If the jury believed my client's defense, which was that he wasn't there, it was essentially a mere presence defense, if they believed that defense, that there was this unaccountable, that there was this – there was this chance meeting at the McDonald's, they would have absolutely convicted Sanchez, because Sanchez was caught in the car with the drugs, with a gun. So in this case, it's – and I recognize that the standard of review is abuse of discretion and that, you know, a joint trial is generally considered preferable for judicial economy, but this is that rare case where both – where the lack of severance deprived Calderon Macias of a fair trial and also of a specific trial right. The specific trial right in question is what I alluded to earlier, the denial of adequate cross-examination and impeachment of Sanchez. Are there any fair note questions on this issue? I will move on. I'm having difficulty understanding why the Sanchez entrapment defense, if believed, it would convict Calderon and Macias, right? But if disbelieved, it would acquit Calderon and Macias.  Along with Calderon and Macias. And I didn't mean to say the con – yeah. Right? So why is it ineluctably unfair to join all three in a trial? Explain that to me. Well, I don't think, first of all, that every single alternative has to result in conviction of my client. The notion of mutually antagonistic defenses is that if one defendant is believed, the other will be convicted, and if the other is believed – you know, in other words, if Defendant A is believed, Defendant B will be convicted. Conversely, if Defendant B is believed, Defendant A will be convicted. And that was the situation here. You're correct. And I did misspeak earlier. If the jury did not believe Sanchez, they still might have acquitted my client. Yes. They might have, because they might have said, well, he's a liar, we think he's a liar, but this guy was just there. Sanchez is a prior convicted felon. He's been involved in drug deals. We don't like his looks. We don't trust him at all. And the other two people have taken the stand and said they were just – happened to be in McDonald's and had a brief conversation with Sanchez. As to those two, there's still a reasonable doubt, and that could have been a perfectly plausible panorama. It is possible, but the key is that if – but the key is, again, it's mutual antagonism. And if – But Defendants are very often mutually antagonistic. That's correct. Pointing their fingers at each other, right? Well, and frequently in those cases, there's a severance. But in this case, there is a difference, and I think – well, first of all, the mutual antagonism really only requires under the law that if one is believed, the other will be convicted. And that is clearly the case, because the jury could not have believed Sanchez without convicting my client. And again, they couldn't have believed my client's defense and Mr. Macias's defense without – without convicting Sanchez, especially since Sanchez was caught with the drugs. I don't know that I've answered your question, but I think I've – I think you've gone as far as you can. Okay. Thank you. The other issue I wanted to mention briefly is the question of the special agent's expert testimony. Now, it's well established, of course, that law enforcement agents can provide some testimony regarding the general principles of drug trafficking. But in this case, what is at issue is the agent's testimony not discussing his belief, based on the record, that there had been counter-surveillance, that there was activity consistent with counter-surveillance, but precise testimony that the defendant's behavior was consistent with, A, acting as a lookout, and, B, being the source of supply. Essentially, the agent testified that my client could have been the source of supply and the other guy was a lookout. There is no Ninth Circuit authority that is directly on point. There is Ninth Circuit authority that holds that some of these – that, again, general testimony is admissible under Rule 702. The Second Circuit has a well-developed body of law which talks about how certain conclusions by law enforcement agents should be excluded under 702 because they are not helpful to the jury. And this is the type of conclusion. Essentially, what the law enforcement agent's testimony was, was a preview of the closing argument. And in this case, prosecution got the benefit, both of the testimony regarding the types of behavior, again, legitimately admitted testimony, and the conclusion that, oh, I think, you know, in my opinion, and I'm an expert, and I'm a law enforcement officer, you know, Isaac Calderon is the source of supply, Isaac Calderon is a lookout, and Macias is a lookout. And it's that type of testimony, I can tell you won't ask me a question, Your Honor. Kennedy. Well, I'm just – I'm remembering some of the facts. Calderon and Macias went in their vehicle and went around a couple of times and came to a stop. When there were many parking spaces available, they took none of them, and they went around a couple of times watching people around. And isn't – it doesn't help the jury that's a trier of fact to be exposed to some expertise as to what that means and what was a drug deal. Well, Your Honor, I'm not – I'm not really contesting that the agent could come in and say, this is what they did, and it's consistent with countersurveillance. What I'm objecting to is the ultimate conclusion, which is really for the jury, that he was a lookout. That is the point, and that is what's argumentative and should be excluded under Rule 702. If there's no further question. The basis for that is the Second Circuit cases, right? Yes, that's right. If there's no further questions, I'll reserve my one minute for rebuttal. Thank you. Thank you very much. Good morning, Your Honors. May it please the Court. Your Honor, I'd like to address the issue concerning the ruling by the District Court prohibiting Ms. Bass from testifying. As the Court is probably well aware, when Ms. Bass was sitting at counsel table during the trial, the co-defendant, Mr. Rene Sanchez – You're talking about the – you're talking about the lawyer now? The lawyer when she was sitting at counsel table, Your Honor. There was the co-defendant, the principal that was dealing with the informant throughout the entire drug transaction, who basically indicated, I want to help Matt Sias. I don't even know him. And, well, maybe we don't have to go that way with that story. I'll talk to my lawyer. Those two statements by Mr. Sanchez to Attorney Diane Bass were essential, and Ms. Bass should have been permitted to take the stand and to testify. I understand and appreciate, you know, having been in trial myself, the advocate-witness rule generally does make significant sense. An attorney doesn't want to get up there on the one hand and be an advocate on behalf of the client, and then on the other hand get up there and essentially be a witness on behalf of the client. We go to ethical issues, issues of credibility, issues of veracity, and the ability  But there's an exception to that rule. And, basically, if the testimony, number one, is vital to the defense, and, number two, if there's no alternative means by which the evidence could have been presented, there is no other option but to have allowed this attorney to have somehow presented it. Let's talk about the alternatives. If I remember the transcript, she was able to cross-examine Mr. Sanchez. She, Ms. Ms. Bass, was able to cross-examine Mr. Sanchez and got from him the admission that he had never seen a Macias before, I think it was October 9, 2002, the date of the transaction, right? Correct. Now, why isn't that substantially the same as the admission, I don't even know this man? It's significant for a substantial reason, Your Honor, because he indicated he had never met Mr. Macias before or maybe never spoke to Mr. Macias before. His answer from a stand under oath was that he did meet Mr. Macias on October 9, 2002. You didn't know Macias until October 9, 2002. That's right. Correct. So he met him October 9, 2002 when he said to her in a whispered aside, I don't even know this man. That wasn't correct, was it? That was not correct. In view of his other testimony. That he did meet him on October 9. Right. But. So I don't even know this man would mean I don't even know them even now. So that statement wasn't as accurate as was his testimony under cross-examination. I think the significance of the statement, though, Your Honor, number one, is that when he testified that he had never met Mr. Macias and he had never spoken to Mr. Macias in the past, if he's indicating that he did not know Mr. Macias, remember the basis for Mr. Macias' conviction was a theory of conspiracy, a theory that somehow there was a meeting of the minds. Now, one conspirator doesn't necessarily need to know the other, but I think it would substantially undermine the basis of proof if the defense was able to establish that maybe Mr. Calderon never mentioned Mr. Macias to Mr. Sanchez, and there was no mention, there was never any interaction. That further substantiates Mr. Macias' own testimony when he testified that on the day of the offense, Mr. Calderon came in a red pickup truck, picked him up, and they went to McDonald's, and he was unwittingly present in the parking lot at the time this drug transaction occurred. In the second statement, well, maybe we don't have to go with that story. I'll talk to my lawyer. I mean, it substantially undermines Mr. Sanchez's credibility and veracity. It basically indicates that he was willing to twist and turn his testimony, whoever or however it so pleased. But the record does reflect that Mr. Sanchez's credibility was substantially compromised on the stand in a number of different instances. Correct. We're looking at a compelling needs standard. I'm not sure how either of these factors meet a compelling need to have Ms. Bass's testimony. I believe that it would have substantially further undermined his credibility in addition to, as I indicated before, undermining the theory that there was a conspiracy, a meeting of the minds, and a togetherness between these individuals. And I think based upon that, the mere inconvenience to the Court would probably have been less than an hour to simply allow the attorney to get up on the stand and testify to this. If the Court indicated there was some concern about the joint defense and there was some indication under 3 --" excuse me, 403, that it would have taken an undue consumption of time, I think it would have taken less than an hour. And I think if there was the attorney started to go astray, the district court could have easily regulated or restrained the attorneys at that point in time and still been fair to all and allowed this evidence to have been presented on behalf of the district court. Kennedy. What is the scope of review of this Court as to the district court's action in determining that there was an undue consumption of time threat under Section 403? The standard of review under evidence of Section 403 is abuse of discretion and whether or not it's reasonably probable the defendant would have achieved a more favorable result had the evidence been properly admitted. If the discretion is abused, the abuse has to constitute harmful error rather than harmless error, right? Correct. And I believe, Your Honor, the only problem there is because it's also infringed upon the defendant's right to have presented a defense under the Fifth and Sixth Amendments to the U.S. Constitution, I don't believe it would be appropriate for this Court to apply the standard of review for abuse of discretion, but rather the Court should apply the standard under Chapman v. California and whether or not the error was harmless beyond a reasonable doubt because it's clearly an error of Federal constitutional dimension, namely the right to present a defense, the right to a fair trial, the right to present and produce witnesses, and the right to have effectively undermined and cross-examined Mr. Sanchez further because it would have further undermined Mr. Sanchez's credibility and veracity. And I believe based upon all of those factors, the appropriate standard of review would not be the abuse of discretion standard that the Court was averring to under Evidence Code or Federal Rule of Evidence 403, but it would have been the Chapman v. California standard of whether or not the error was harmless beyond a reasonable doubt. Unless the Court has any further questions, I'd be prepared to submit. May I ask, Your Honors, I believe if I could join and co-counsel these arguments just so that the record is clear. Thank you. So ordered. Good morning, Your Honors. Jeanne Joseph on behalf of the United States. May it please the Court. I'll address severance first. This case is strikingly similar to the Cruz case, which is cited by the government. That case was also a drug conspiracy case involving a number of participants. In that case, the defendant Cruz, like Sanchez here, inserted an entrapment defense, and he testified at trial to incriminate a co-defendant, Mesa. Cruz testified that Mesa offered him $3,000 to take drugs to Guam and paid for the plane tickets. Mesa, in the Cruz case, is similar to Calderon or Macias in this case. Mesa asserted a lack of – a reasonable doubt defense, a lack of evidence on the part of the government tying him to the scheme. He did not take the stand. He did request severance, however. And finally, there's a third co-defendant in the Cruz case, Titano. He asserted an innocent bystander defense, which is similar to what Macias asserted in this case. Titano also testified and implicated Mesa once again. He testified that Mesa asked him to accompany another co-defendant and told him that he would be carrying drugs. So I think this case is very similar here, where co-defendants, their defenses might be antagonistic. And under the case law, that's acceptable. The standard is mutually exclusive or irreconcilable. And given this Court's finding in the Cruz case that these defendants weren't mutually exclusive or irreconcilable, I think it's – a similar holding would apply in this case. This case is not like the unique circumstances this Court has found on those few occasions where it felt severance was required, like Tudyk and Mesa. Kennedy, your point that if they believed Sanchez that he was entrapped, the other two would somehow be acquitted? That's correct, Your Honor. A jury certainly could find that Defendant Sanchez was entrapped, but find that there still was not sufficient evidence to tie these other two people to the conspiracy. By whom would he have been entrapped? By the government agent. And he could have gotten the drugs from another source of supply. He could have been lying on parts of the story and not on others. So it was entirely possible for them to believe Sanchez's story about entrapment and still find these other defendants not guilty by virtue of the fact there wasn't sufficient evidence or perhaps an innocent bystander defense. Again, the case is not like Tudyk and Mayfield, where, as in Tudyk, there was someone who was stabbed to death and only two defendants present. So they pointed the finger at each other, but by virtue of the facts, if you acquit one, the other is guilty. This is a different case. It's a conspiracy involving multiple participants with different jobs. And again, this Court's concern in Mayfield and Tudyk and those few cases where it felt Severts was a problem was the denial of a specific trial right, mostly, usually, impermissible post-arrest statements that were brought into the trial. And denied a co-defendant the right of confrontation, that is not applicable here. Only Sanchez's post-arrest statements were allowed. He took the stand and was cross-examined about those by both defense counsels. Calderon also made post-arrest statements, but those were not allowed into evidence because he did not take the stand. So there's no impermissible bringing in of those statements. Again, Sanchez, not heavily relied upon by the government, I believe, in closing government simply said, Sanchez said these things implicating these defendants, but if you leave that aside, here's all the other evidence establishing their guilt. You don't need to rely on Sanchez. Sanchez had severe credibility issues, hardly a star witness. He exculpated Macias, and he impeached the government's main witness, the confidential informant. There's a plethora of separate evidence establishing these defendants, Calderon and Macias' guilt, other than Sanchez. The government put out an entire case before he took the stand. There are counter-surveillance tactics, they're looking around the parking lot. Do you think that the, there was an expertise sufficient to allow opinion and testimony by an officer as to what actions constitute counter-surveillance? Beyond his statement, I observed them doing these things. Well, actually, Your Honor, that was sort of separated. The agents who actually witnessed the events testified simply to the witnesses of the events, whereas the expert was simply brought in. He had read through the other people's, or had heard the other people's testimony and comment on it. Is that really a basis of expertise, or is that just another pre-argument argument? No, Your Honor. If we're turning to the role of the offense argument here, that really the expert did not cross the bounds of 704B and testify and overstep the bounds of what is allowed as far as the defendant's intent. And I say that because he merely testified that certain actions that were testified to by other witnesses of what the defendants do were consistent with different roles in a drug-trafficking operation and was helpful to the jury to explain how what might be innocuous conduct, driving up and down the parking lot, looking around, being on cell phones, might actually be evidence of a drug-trafficking conspiracy, because that's how they work, and they work with, you know, brokers and they work with lookouts. So that was – and I think just finishing off that argument, what shows that the expert did not go beyond the bounds he was supposed to is that it was up to the jury to decide a couple of factual issues. What exactly did Macias and Calderon do? Did they drive up and around the parking lot? Did they look around? Were they on their cell phone? But also, there was a factual dispute about even if these defendants did those actions, what did they mean? Because Macias explained that why he was doing it was because they were looking for a parking spot, they were meeting a friend there, he walked out of the car to ask about the Happy Meal, so the jury had to find not only what did they do, but what was their intent in doing that? And for that reason, the expert opinion did not go to that area. That was something left to the jury to decide. Just very briefly back to the separate evidence against each of the defendants, as I mentioned, there was sort of the counter-surveillance activity against both of the defendants. There's expert testimony to assist the jury with that type of testimony. There was a transcript which showed that there was another person involved in the drug transaction other than Sanchez and the confidential informant. Would you please address the point that Macias' attorney was not allowed to testify as to some statements made by Sanchez that he was prepared to change his story? Absolutely, Your Honor. I think what's important here is when the issue was first raised by Macias' counsel is that she informed the court, well, I guess I could just cross-examine Defendant Sanchez on the subject. The court said, I will allow that cross-examination. And Macias' counsel then proceeds to do just that on cross-examination. She was able to get out of Sanchez on the stand that Sanchez did not know Macias before that date. That was not Macias on the tape recording of the conversations leading up to the drug deal. And Rick was not Macias. The confidential informant had referred to this other person as Rick and identified Macias as Rick when he walked up to the car. And also elicited that Macias did not walk over to the car and say, hurry up, get the blank out of here, and let's finish this transaction. So Macias' counsel is able to, on cross-examination, get the statement. Didn't you tell me that you were ready to go with another story if your attorney agreed to it? Well, Your Honor, that's correct. Macias' counsel did not ask that question, but there's no evidence in the record that the Court would have disallowed that at all. The Court had said, I'll allow you to cross-examine on those statements made between you and Sanchez at the table, you know, when the confidential informant was on the stand. And perhaps, and I can only guess if the reason Macias' counsel didn't bring up, you know, brought up one of the statements but not the other, is it's capable of interpretation of what it means and perhaps didn't move the ball forward. One of the district court's bases for not allowing Ms. Bass to testify was that there was a potential de facto joint defense privilege. Is there any basis for that? Is there any case establishing that sort of de facto joint defense privilege in this sort of circumstance? Well, I don't believe that Counsel for Sanchez brought up any case law. The judge did find that to be significant, although she didn't base it solely on that that although one of Sanchez's statements was spontaneously made, but then perhaps the other statement was elicited by Ms. Macias asking a question of the defendant or making a statement to the defendant. And again, this was during a time period when the confidential informant was on the stand, and all three of the defendants had an interest in impeaching the confidential informant. But it's kind of odd, as Judge Acuda says, to think there was a joint defense going on when they're asking for a severance, and, you know, one guy's saying I've been, you know, I've been entrapped, and, you know, the others are containing that the defenses are inconsistent. I don't see under that circumstance how there could be a joint defense. You're right, Your Honor, and I think there's other bases. I think the Court was concerned that, again, is someone talking to a represented party, and perhaps they were adverse at this point or not, but this person is represented by separate counsel, and perhaps there's an issue of having a conversation with the represented defendant without their counsel present or acknowledging  But other bases the Court found, of course, there is the advocate-witness rule, which would be very problematic, but there's undue consumption of time. This was a side issue. Again, Macias' counsel had the opportunity to cross-examine on the subject and did. Just moving to the issue about the impeachment of the kidnapping conviction, which counsel for Macias here said was the denial of the specific trial right. That is not the case here. This conviction, there was two reasons the defense wanted it in to establish Sanchez's knowledgeability regarding firearms, to impeach his statements that he didn't know about firearms, and to establish that he was not just a drug user but a drug dealer. I think as to the former, the district court properly excluded this conviction because the actual conviction, there was no evidence by the conviction that Sanchez had any knowledge about firearms. This was not an element of the offense which he was charged with. It was a sentencing enhancement, and under that sentencing enhancement, under the statute, it just simply requires that a principal in a conspiracy possesses or uses a gun. There is no evidence that Sanchez used a gun or knew that a gun was used in this conspiracy, and that's why the government represented that it cannot establish that this conviction established Sanchez's knowledge regarding firearms. So I think that that was probably properly excluded. As far as Sanchez's knowledge about drug dealing and drug debts, there is a plethora of that evidence that came in. The defense was allowed to impeach Sanchez in many ways, a lot of accumulative of what the government did. There are two prior convictions for drug trafficking. There was a prior prison term related to drugs which was not specified. The transcript itself of the conversations with the confidential informant leading up to the drug deal, lots of drug lingo. It shows his ---- But what's the purpose of keeping out a prior conviction of felony? Doesn't that go to the man's character and his reliability as a witness? It does, Your Honor. This was an old felony. We had two other felony convictions directly on point to discredit him, as well as one involving dishonesty with a misdemeanor false fraudulent use of a telephone. But credibility is a relative term, especially in a criminal case. And the more you can paint the prosecution witness as being uncredible or not worthy of credit, the better. I don't see why you keep the judge kept out the kidnapping conviction. Well, the judge felt, and again, this is abuse of discretion standard, that the kidnapping was prejudicial by its terms, such as a carjacking or something. Well, everything that hurts isn't prejudicial. That's true, Your Honor. The judge felt that I think under the circumstances with all the other evidence to impeach the defendant, Defendant Sanchez, including, again, two prior drug trafficking convictions, if this is the reason that Macias and Calderon wanted to impeach Sanchez with his knowledge of drug dealing, it was all there. He was severely impeached. Again, confidential informants testimony. Sanchez admitted that he knows what happens to people who don't pay drug debts. He testified that he knew how drug deals worked. But prejudicial to whom? I mean, prejudicial to Sanchez? Are we concerned with his prejudice? I think the Court was probably concerned with prejudice. Who were worried about prejudicing? It appeared the Court was worried about prejudice to the defendants, in this case Defendant Sanchez, with this impeachment. I'd also add that Sanchez was effectively impeached on a number of levels. And when he did that, the Court was worried that they might not believe Sanchez's entrapment defense by showing that he was a kidnapper. But it was all right to show that he's been involved in a couple of prior felonies dealing drugs and spent time in prison. I think the Court felt that the drug, prior drug trafficking convictions were more relevant to the facts of this case to directly impeach Sanchez on his own. Well, that's impeaching him of prior acts of conduct, showing a character and acts consistent with the character seems to me to be character evidence, not impeachment testimony. You're impeached by felony convictions, right? You're not impeached by similar acts that you've done before. That's character testimony. I think that the judge might very well have mixed up those two concepts. Well, Your Honor, I think the important thing is the standard here is that the defendants are entitled to effective impeachment of a witness, not to impeachment on anything under the sun. And here, they had all of the tools, and Sanchez was effectively impeached with the prior felony convictions, the prior misdemeanor conviction relating to his reputation for honesty, his two prior prison terms in addition to that, lying to police when arrested, lying to the court, lying to his wife, being a drug user, buying a brand-new nice truck when he had apparently no money. Do you claim that the kidnapping conviction would involve an undue consumption of time? I'd have to check the record. I don't think that that was taken on the stand. Weren't you also convicted for kidnapping? Again, Your Honor, it appears from the record the court felt, the district court felt, that the kidnapping had a greater prejudicial value. It outweighed its probative value. It felt that the probative value would be merely cumulative at this point, given all the other testimony, the prior convictions, and the evidence. And I have three minutes left. I guess, very lastly, well, I guess unless the court has further questions, I'll submit on that. Thank you. Very briefly, Your Honor. In terms of the severance, this case is very difficult to distinguish from Mayfield, and I just wanted to bring the Mayfield case to this Court's attention. In that case, the defendants had what the Court found were mutually irreconcilable defenses. Both were convicted. Just as in this case, we had antagonistic defenses, which resulted in the conviction of all the defendants. In Mayfield, the key to the irreconcilability was that if one defendant were believed, the other one would be convicted, and vice versa, and it was the same thing. One defendant had a stronger link to the drugs and the apartment than the other, and the other one had a plausible mere presence defense. In terms of the kidnapping conviction, the judge did exclude it under 403 because it was too prejudicial to Defendant Sanchez. The judge having a joint trial meant the judge had to be concerned about all the defendant's rights. But the fact the decision to exclude the kidnapping conviction, and again, Your Honor, it's not that it was a kidnapping conviction. It's that it was a kidnapping over a drug debt. That was the issue. It's a far crop to be involved. It's plausible for a defendant to argue entrapment when he's been convicted of possession for sale, especially when you have relatively small quantities of drugs. We're talking drugs, I believe the quantities involved were, you know, maybe under an ounce or in that lower level. We're not talking pounds or kilos. And so the fact that a defendant was convicted of kidnapping for over a drug debt would really have eviscerated Sanchez's testimony in a way that did not happen. Kennedy. Why would you have been entitled to show that it was over a drug debt? All you're entitled to show is a prior conviction of a felony and name the felony, period. If you go over a drug debt, if you put the information over a drug debt, then you're bringing in character evidence to show a disposition to commit a crime and the likelihood that he committed a crime on this occasion. That would not be proper, would it? Your Honor, he opened the door because he testified he wasn't a drug dealer. So when he did that, that opened the door to that sort of testimony. But that's different from impeaching with the kidnapping. It's an entirely different, you know, line of questioning, and the judge should rule on that separately, if you made that offer separately. Well, the offer was made. Well, you're right that the offer was made initially because the government, of course, sought to get in the kidnapping, and the government brought up that it was. But you're right, it didn't they didn't raise the issue again. Let me ask you, by the way, let me ask you a question on your severance argument. As far as I can tell, you or neither defendant renewed the motion for severance at the close of the evidence. I believe it was renewed, Your Honor. I believe it was renewed. I went through it in my brief. It was renewed several times, and I believe it was again renewed. I can find it at the close of the evidence. I'll have to check the record, Your Honor, to make sure, but I'm pretty sure. Do you believe you did? I'm sorry? Do you believe you did renew it? Yes, I do, Your Honor. I'd like to yield my co-counsel has a response, so I'll yield the rest of my time unless there's further questions. Go ahead. Your Honor, on several occasions we were talking about the opportunity that Ms. Bass had to confront and cross-examine Mr. Sanchez, but it cannot be forgotten that the cross-examination of Mr. Sanchez occurred a day or two prior to when Mr. Sanchez approached Ms. Bass and made these remarks to her concerning Mr. Macias' non-involvement in his willingness to twist and turn his testimony. So based upon that ---- I thought she cross-examined him after he made this statement. No. The cross-examination of Mr. Sanchez occurred a day or so earlier. That was at this point there was no opportunity to cross-examine Mr. Sanchez as to these statements that he made, because she had already cross-examined him previously. And you can't just put him back up on the stand. I have the impression, Ms. Joseph, that after the issue was raised, Ms. Bass said, quote, I could just cross-examine, unquote, and proceeded to do so. That is incorrect. No, that's incorrect. The cross-examination of Mr. Sanchez occurred previous to him making that statement to Ms. Bass. And I believe, if I'm correct, it was a day earlier. With regard to the joint defense agreement, there was no joint defense agreement. As this Court has indicated, every one of these defendants wanted a severance. Nobody was together. There was never an agreement, formal or informal, among these three defendants to proceed together and to present a joint defense. But rather, their defenses were mutually antagonistic because Mr. Sanchez is asserting that he was entrapped. Mr. Calderon is asserting he knew nothing. And Mr. Macias is asserting he knew nothing, that he was just helping Mr. Calderon move in a red van. Certainly, there was no joint mutual agreement among these people to present a unified defense. So that was no evidence to support it. Both Ms. Bass and Mr. McDonald adamantly denied that there was ever such an agreement. And based upon that, we believe that it was significant harmful error to have disallowed Ms. Bass's testimony. So the Court is in favor of it. Thank you very much. All right. This matter will be submitted for decision.
judges: Tashima, Bea, Ikuta